# RECORD NO. 13-4501

In The

# United States Court Of Appeals
## For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

# ALONZO GARDNER,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH**

_____

**BRIEF OF APPELLANT**
_____

Joshua W. Willey, Jr.
MILLS & WILLEY
507 Pollock Street, Suite 5
P. O. Drawer 1638
New Bern, NC  28563
(252) 638-1111

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

# TABLE OF CONTENTS

**PAGE:**

JURISDICTIONAL STATEMENT ........................................................1

ISSUE PRESENTED ...........................................................................1

STATEMENT OF THE CASE ..............................................................1

STATEMENT OF FACTS ....................................................................3

SUMMARY OF ARGUMENT ..............................................................5

ARGUMENT AND AUTHORITIES .....................................................6

    I.      Standard of Review .................................................6

    II.    The District Court Erred in Holding That Alonzo Gardner
        Lacked a Reasonable and Legitimate Expectation of Privacy in
        the Storage Room ....................................................6

    III.   Alonzo Gardner also Had a Legitimate Expectation of Privacy
        in the Closed Containers Found in the Storage Room .........................8

    IV.   Lillie Gardner Lacked Actual or Apparent Authority to Consent
        to a Search of the Storage Room ...........................................9

    V.    Lillie Gardner Lacked Actual or Apparent Authority to Consent
        to a Search of the Gun Case and Duffel Bag Found in the
        Locked Storeroom ..............................................................12

    VI.   This Search Cannot Be Justified Under the Plain View
        Exception or Single Purpose Container Exception to the Fourth
        Amendment's Warrant Requirement ..................................14

    VII.  The Search of the Storage Room and the Search of the Rifle
        Case and Duffel Bag Cannot be Justified by Exigent
        Circumstances ....................................................................15

CONCLUSION ..................................................................................................17

REQUEST FOR ORAL ARGUMENT ...............................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S):</u>

## <u>CASES</u>:

Bumper v. North Carolina,
    391 U.S. 543 (1968) ......................................................................... 7-8

Doe v. Broderick,
    224 F.2d 440 (4th Cir. 2000) ...................................................... 6

Illinois v. Rodriguez,
    497 U.S. 177 (1990) ........................................................................10

Mincey v. Arizona,
    437 U.S. 385 (1978) ........................................................................15

Minnesota v. Carter,
    525 U.S. 83 (1998) ...........................................................................7

Minnesota v. Olson,
    495 U.S. 91 (1990) ...........................................................................8

Reaves v. Warden,
    346 F.2d 915 (4th Cir. 1965) ....................................................13

U.S. v. Block,
    590 F.2d 535 (4th Cir. 1978) ....................................................13

U.S. v. Bullard,
    645 F.3d 237 (4th Cir. 2011) ......................................................6

U.S. v. Davis,
    690 F.3d 226 (4th Cir. 2012) .................................................6, 14

U.S. v. Gray,
    491 F.3d 138 (4th Cir. 2007) ......................................................8

U.S. v. Karo,
    468 U.S. 705 (1984) .........................................................................13

U.S. v. Kinney,
    953 F.2d 863 (4th Cir. 1992) ..........................................................10

U.S. v. Matlock,
    415 U.S. 164 (1974) ...........................................................................9

U.S. v. Moses,
    540 F.3d 263 (4th Cir. 2008) ...........................................................15

U.S. v. Presler,
    610 F.2d 1206 (4th Cir. 1979) ...........................................................8

U.S. v. Toyer,
    414 F. App. 584 (4th Cir. 2011) ........................................................12

U.S. v. Villareal,
    963 F.2d 770 (5th Cir. 1992) ..............................................................8

U.S. v. Waller,
    426 F.3d 828 (6th Cir. 2005) .................................................9, 10, 11

## **STATUTES:**

18 U.S.C. § 922(g)(1) ..............................................................................1

18 U.S.C. § 924......................................................................................1

18 U.S.C. § 3231....................................................................................1

28 U.S.C. § 1291....................................................................................1

## **CONSTITUTIONAL PROVISION:**

U.S. Const. amend. IV ..................................................................passim

## JURISDICTIONAL STATEMENT

Alonzo Gardner appeals from orders entered in the United States District Court for the Eastern District of North Carolina in criminal case number 5:11-CR-00228-FL-1 on November 30, 2012 and January 30, 2013 which granted in part and denied in part his Motion to Suppress. Defendant's right to appellate review of these orders was expressly reserved in the Memorandum of Plea Agreement filed March 13, 2013.  Final judgment was entered on June 20, 2013.  Notice of Appeal was filed on June 28, 2013.

The District Court had original jurisdiction over the subject matter of this case pursuant to 18 U.S.C. § 3231.  This Court's jurisdiction is granted in 28 U.S.C. § 1291.

## ISSUE PRESENTED

1.      Did the District Court err by failing to grant Defendant's Motion to Suppress evidence of the rifle case, its contents, and statements derived therefrom seized during a warrantless search of Defendant's residence?

## STATEMENT OF THE CASE

Alonzo Gardner was charged in an indictment, filed August 3, 2011, with one count of possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924.  (JA 16)

On December 14, 2011, Defendant filed a Motion to Suppress in which he sought suppression of all evidence seized and statements made as a result of a warrantless search which occurred on July 13, 2011.  (JA 19)  The Government timely filed its response on January 5, 2012.  (JA 40)

Defendant's motion was heard by the United States Magistrate Judge on January 26, 2012 and February 1, 2012.  (JA 57, 185)  On August 9, 2012, the Magistrate Judge entered his Memorandum and Recommendations, recommending that the Motion to Suppress be denied.  (JA 306)  Defendant's Objections to the Memorandum and Recommendations were filed September 25, 2012 (JA 330) and the Government's response on October 4, 2012. (JA 343)

The District Court entered an order regarding the Motion to Suppress on November 30, 2012.  (JA 346)  In that order, the Court overruled Defendant's objections to the issues specifically considered by the Magistrate Judge, adopted the Magistrate Judge's findings in full, and directed the Government to file a response to issues not considered by the Magistrate Judge.  The Government's Response was filed on December 14, 2012 (JA 356) and Defendant's Reply on December 21, 2012. (JA 371) The District Court entered an Order on January 30, 2013 granting in part and denying in part Defendant's Motion to Suppress.  (JA 381) The Order denied Defendant's Motion to Suppress as it related to a gun case and its contents seized during the search and the statements derived therefrom.

2

Pursuant to a Memorandum of Plea Agreement, the Defendant pled guilty on March 13, 2013. The Plea Agreement specifically allowed the Defendant to reserve his right to appeal from the District Court's Orders entered on November 30, 2012 and January 30, 2013 relative to his Motion to Suppress. (JA 392)

On June 20, 2013, the District Court sentenced the Defendant to a term of 105 months in the Bureau of Prisons. (JA 397) Mr. Gardner timely noted his appeal on June 28, 2013. (JA 404)

## STATEMENT OF FACTS

During the early morning hours of July 13, 2011, a Raleigh police officer stopped a vehicle because of an expired license tag. (JA 64, 65) The driver fled and, after an altercation with the officer, escaped. (JA 66-72) Investigation revealed that Alonzo Gardner was the driver and the location of the residence at which he was believed to reside. Officers then went to that residence, talked to the occupants, and waited for the owner to arrive. When the owner, Consuela Gardner, arrived, she consented to a search of the residence. Consuela and Alonzo Gardner are cousins. She told the officers that Alonzo Gardner resided there on house arrest. (JA 80-85) The search of the residence did not result in discovery of Mr. Gardner and the officers left. (JA 85-86) No effort was made to locate Alonzo

Gardner through the ankle transmitter he would have been wearing as a result of his house arrest.  (JA 87)

Later that morning, Lieutenant Rosa with Raleigh Police Department began surveillance of the Gardner residence.  He observed a taxi go to the residence and, after a short time, leave. (JA 97-99)  Lieutenant Rosa stopped the cab and as a result of his interaction with the cab driver and passenger, decided to search the residence.  To that end, he called in backup, including a SWAT team.  (JA 101-105)

Lieutenant Rosa found Alonzo's aunts Lillie and Darlene Gardner at the residence.  Lillie Gardner also lived there. He asked her permission to search the residence and its curtilage, but did not seek to have her sign a written consent form. (JA 108-111, 190)  Alonzo Gardner was not found during the ensuing search. (JA 111)

However, officers observed a locked door on the outside of the residence. They conferred with Lillie Gardner regarding this door.  She did not have a key to the door.  She told the officers the door accessed the room in which Alonzo Gardner hung out.  She was asked for consent to search the room, but was not asked to sign a consent form. (JA 112,115-117, 135-136) The SWAT team forced entry through the locked door. (JA 148) They did not find Alonzo Gardner.

4

However, they saw a gun case which they removed from the room prior to completing the search for Mr. Gardner. (JA 149-152)

After the gun case was found and the SWAT team had determined that Alonzo Gardner was not in the room, officers again consulted with Lillie Gardner. On this occasion, the officers not only asked Ms. Gardner's consent to search the storage room, they also had her sign a consent form. (JA 117-120) The search continued and resulted in recovery of a duffel bag which was found to contain a firearm and ammunition.  (JA 167)

## SUMMARY OF ARGUMENT

Alonzo Gardner had a reasonable and legitimate expectation of privacy in the storage room at Consuela Gardner's residence. He also had a reasonable and legitimate expectation of privacy in the locked gun case and zipped duffel bag found in the storage room.  Lillie Gardner had neither actual nor apparent authority to consent to the search of the storage room, the locked gun case, or zipped duffel bag.  This search does not fall within the plain view or single purpose exception to the Fourth Amendment's warrant requirement.  The warrantless search in this case cannot be justified by exigent circumstances.  Consequently, the trial court erred when it failed to grant Mr. Gardner's Motion to Suppress in its entirety.

5

## ARGUMENT AND AUTHORITIES

### I.     Standard of Review

The issue involved in this appeal relates solely to the District Court's failure to grant Defendant's Motion to Suppress in its entirety.  In reviewing a District Court's decision on a Motion to Suppress, the Court of Appeals reviews the findings of fact for clear error and the District Court's legal conclusions *de novo*. U.S. v. Davis, 690 F.3d 226 (4th Cir. 2012).

### II.     The District Court Erred in Holding That Alonzo Gardner Lacked a Reasonable and Legitimate Expectation of Privacy in the Storage Room.

When challenging a search under the Fourth Amendment, a defendant bears the burden of proving that he has a legitimate expectation of privacy in the searched area by the preponderance of the evidence.  This expectation of privacy must be objectively reasonable.  U.S. v. Bullard, 645 F.3d 237 (4th Cir. 2011).  A legitimate expectation of privacy is made up of two parts.  First, the individual must have a subjective expectation of privacy in the area searched and, secondly, that subjective expectation must be one that society is willing to recognize as reasonable.  Doe v. Broderick, 224 F.2d 440 (4th Cir. 2000).

The evidence establishes, by its preponderance, that Alonzo Gardner had a reasonable and legitimate expectation of privacy in the storage room.  His cousin, Consuela Gardner, owned the residence.  (JA 84)  On the day of the search, there were four full-time residents in the home, Consuela Gardner, her daughter, her

6

mother Lillie Gardner, and Alonzo Gardner.  On July 13, 2011, Alonzo was on

house arrest.  His cousin permitted him to live at the home while on house arrest.

He had lived there continuously for almost six months.  (JA 215, 223-224)

Because the home was crowded, Alonzo did not have his own bedroom,

sometimes sleeping in Lillie Gardner's room and at other times in the living room.

(JA 215-222)  The storage room was the area of the home that Consuela had set

aside as Alonzo's private space.  Most of his personal items were kept in the

storage room.  (JA 217-221)  Correspondence addressed to him was found in that

room and not elsewhere in the home.  (JA 167)  The storage room was the area of

the home in which he went to hang out and be alone.  When he had guests, they

visited him in the storage room and not the house proper.  (JA 217-221)  Consuela

and her daughter rarely went to the storage room.  Lillie Gardner did not have a

key to the room, (JA 147) and Consuela did not think she had ever been inside the

room.  (JA 221)  When cross-examined at the suppression hearing, Consuela

Gardner refused to describe the room as a common storage area and insisted that

she allowed Alonzo to have it as his space.  (JA 229)

The United States Supreme Court has recognized that persons, like Alonzo,

may have a reasonable expectation of privacy in the home of someone else.

Minnesota v. Carter, 525 U.S. 83 (1998).  Relatives of homeowners who regularly

reside at the residence are protected by the Fourth Amendment.  Bumper v. North

Carolina, 391 U.S. 543 (1968).  Alonzo Gardner was a relative of the home owner

and regularly resided in the residence.  The Supreme Court has even extended the

Fourth Amendment's privacy protections to overnight guests in a home.

Minnesota v. Olson, 495 U.S. 91 (1990). Hence the District Court's conclusion that

Alonzo was not a permanent resident of the home is not only unsupported by the

evidence but is also without legal significance. The Fourth Circuit Court of

Appeals has held that the Fourth Amendment safeguards privacy interests of

owners and tenants of a home, as well as co-tenants and co-occupants.  U.S. v.

Gray, 491 F.3d 138 (4th Cir. 2007).

### III.    Alonzo Gardner also Had a Legitimate Expectation of Privacy in the Closed Containers Found in the Storage Room.

Alonzo Gardner had a legitimate expectation of privacy in the locked gun

case and zipped duffel bag.  The gun case was locked and the key found on

Alonzo's person.  (JA 174-175, 179-180)  He kept the duffel bag zipped closed.

(JA 175)  Both containers were in the storage room in Consuela Gardner's home.

Locking a container and retaining the key serves as an effective expression of an

expectation of privacy in the container.  U.S. v. Presler, 610 F.2d 1206 (4th Cir.

1979).  Merely placing an object in a closed container manifests a subjective

expectation of privacy in that object.  U.S. v. Villareal, 963 F.2d 770 (5th Cir.

1992).

It is clear that Alonzo Gardner had a subjective expectation of privacy in the rifle case and duffel bag, as well as the storeroom itself.  U.S. v. Waller, 426 F.3d 828 (6th Cir. 2005) is analogous.  There, defendant's friends allowed him to store his belonging in their apartment.  He kept some of these in a zipped luggage case which was stored in a bedroom closet.  The Waller court held that these circumstances not only indicated a subjective expectation of privacy, but one which society was prepared to recognize.

## IV.  Lillie Gardner Lacked Actual or Apparent Authority to Consent to a Search of the Storage Room.

It is clear from Consuela Gardner's testimony at the suppression hearing, recited above, that the locked storage room was considered Alonzo Gardner's private space.  It was the space to which he retired for his privacy. It was the area in which he entertained guests.  Although Consuela had not forbidden her mother to go into the storage closet, to her knowledge, Lillie Gardner had never been inside the room.  (JA 221))  There is no evidence in the record that Lillie had ever, in fact, been in that room.  The officers conceded that Lillie advised them she did not have a key to the door and that the locked door led to the area where the Defendant hung out.  (JA 147)

In U.S. v. Matlock, 415 U.S. 164 (1974), the United States Supreme Court held that when property is mutually used and each person had joint access and control, each party has authority to consent to the search.  Evidence at the

9

suppression hearing firmly establishes that the storage closet was not an area of the home in which Lillie and Alonzo Gardner exercised mutual use and access.  In U.S. v. Kinney, 953 F.2d 863 (4th Cir. 1992), the court held that a defendant's girlfriend did not have actual authority to consent to search of a closet which the defendant kept locked and she had never been inside until she secretly opened it.

Even though Lillie Gardner did not have actual authority to consent to the search, the discussion cannot end.  The question becomes whether there was a basis for a reasonable belief that she did have authority to consent.  When a third party does not have actual authority to consent to a search, the search can, nevertheless, be upheld if police officers reasonably believed that the third party had that authority.  Illinois v. Rodriguez, 497 U.S. 177 (1990).  Consent is valid if the facts available to the officers would warrant a person of reasonable caution in the belief that the consenting party did have authority over the premises.  Where circumstances presented would cause a person of reasonable caution to question whether the third party had mutual use of the premises and was therefore authorized to consent to a search of the property, warrantless entry without further authority is unlawful.  U.S. v. Waller, *supra*.

Disregarding the suppression hearing testimony of Lillie and Darlene Gardner and accepting the officers' testimony at face value, a person of reasonable caution would have questioned whether Lillie had authority to consent to a search

10

of the locked storage room.  The officers knew she was not the owner of the
residence. (JA 84)  The officers acknowledged when they initially asked her about
the locked side door, she told them that was where Alonzo Gardner hung out.  (JA
147)  When Officers Gunther and Howard asked Lillie if they could search the
locked room, they also asked if she had a key.  She told them she did not.  (JA 147)
Before signing the written consent form, Lillie told the officers that she needed to
call her daughter first and, in fact, attempted to contact Consuela.  (JA 161)

     The fact that Lillie Gardner did not have a key to the locked door is crucial.
When a non-owner resident tells officers that a locked area is where another person
hangs out, does not have a key to that locked door, and wants to talk to the owner
of the residence before signing the consent form, persons of reasonable caution
would question whether she had authority to consent.  When circumstances cause a
person of reasonable caution to question whether the third party had mutual use of
the property and therefore had authority to consent, warrantless entry without
further inquiry is unlawful.  The government fails to establish that its agents
reasonably relied upon the third party's authority if, when faced with an ambiguous
situation, they nevertheless proceed without further inquiry.  U.S. v. Waller, *supra.*
The officers here, at best, were presented with an ambiguous situation when Lillie
Gardner told them that another person hung out in the locked area and she did not

have a key to the door.  Yet they proceeded to search without a warrant without

further inquiry.

**V.    Lillie Gardner Lacked Actual or Apparent Authority to Consent to a Search of the Gun Case and Duffel Bag Found in the Locked Storeroom.**

When Lillie Gardner did not have a key, the SEU team made a forced entry

into the storage room.  (JA 148, 156-157)  They discovered a rifle case which

appeared to have a rifle in it.  (JA 149-152)   After discovering the gun case and

confirming that Alonzo Gardner was not in the storage room, officers consulted

with Lillie Gardner regarding consent to continue searching the room.  (JA 117-

120)  During this continued search, the officers found a zipped black duffel bag.

Officer Brown unzipped the bag and discovered an assault rifle and magazines.

(JA 175)

The government must show by preponderance of the evidence that it

obtained valid consent to search.  U.S. v. Toyer, 414 F. App. 584 (4th Cir. 2011).

For purposes of third-party consent, authority to consent requires "evidence of

mutual use by one generally having joint access or control for most purposes.

Such use makes it reasonable to recognize that any of the co-users has the right to

permit inspection in her own right."  Toyer, *supra*, at 588.  Consent to search a

closed container must come from one who has common authority over the effects

sought to be searched, who has mutual use of the property, and who generally has joint control or access.  U.S. v. Karo, 468 U.S. 705 (1984).

In Reaves v. Warden, 346 F.2d 915 (4th Cir. 1965), defendant and his mother were guests residing in a sister's home.  Officers searched the defendant's room and bureau based upon mother's consent.  The court held she was without authority to consent to a search of the room and bureau because it had been set aside exclusively for his use.  In U.S. v. Block, 590 F.2d 535 (4th Cir. 1978), the defendant was a guest-occupant in his mother's home.  She had the normal access to that room that heads of household customarily have.  The court held that although she may have had authority to permit search of the room, she lacked authority to consent to search of her son's footlocker located in that room.  These decisions are controlling on the question of whether Lillie Gardner had actual or apparent authority to consent to a search of the closed containers.

There is no evidence that Lillie Gardner had mutual use of the zipped duffel bag or locked gun case.  Consequently, she lacked authority to consent to search of these closed containers.  Given Lillie's reaction when told about the existence of the gun case, it obvious that she did not know about these containers of their contents. (JA 118) It cannot be said that she had apparent authority to consent to a search of these containers.

13

**VI.   This Search Cannot Be Justified Under the Plain View Exception or Single Purpose Container Exception to the Fourth Amendment's Warrant Requirement.**

The plain view exception applies only when (1) an officer is lawfully located in a place from which the items can be plainly seen; (2) the officer has a lawful right to access the items; and (3) the incriminating nature of the seized item is immediately apparent.  U.S. v. Davis, 690 F.3d 226 (4th Cir. 2012).  Although courts have sometimes spoken of a single purpose container exception, this is really nothing more than what we have traditionally called the plain view exception. A container seen in plain view may be searched if its contents are obvious from the container itself. Defendant contends, as set forth in the preceding argument, that the plain view exception cannot apply in this case because the officers were not lawfully located in the place from which the items could be plainly seen.  The rifle case and duffel bag could not be seen until after the officers entered the storage room.  As previously explained, Lillie Gardner did not have apparent authority to consent to a search of that room, therefore the officers were not lawfully in that room.

Officers saw the locked gun case while searching for the Defendant.  (JA 149)  It cannot reasonably be said that the incriminating nature of the gun case was immediately apparent.  The existence of a gun case or, for that matter, a gun in the storage area, was not obviously incriminating.  The transcript of the suppression

hearing contains no inference that at the time of the search the officers were aware that Alonzo was a convicted felon. No controlled substances were found in the storeroom. The presence of the gun case in the storage room was no indication that Alonzo or anyone else had committed a crime.

The zipped duffel bag was not recovered during the initial search of the room for Mr. Gardner. There was nothing about the external appearance of the duffel bag which would lead one inexorably to the conclusion that a firearm was enclosed. The incriminating nature of the duffel bag or its contents was not immediately apparent. When recovered, the officers still did not know that Alonzo was a convicted felon. Hence, the plain view exception does not support the seizure or search of either the gun case or the duffel bag.

**VII.  The Search of the Storage Room and the Search of the Rifle Case and Duffel Bag Cannot be Justified by Exigent Circumstances.**

Warrantless searches are permitted when the exigencies of a situation make the needs of law enforcement so compelling that a warrantless is objectively reasonable. Mincey v. Arizona, 437 U.S. 385 (1978). Courts have found that the exigent circumstances exception applies when speed is necessary to prevent escape, destruction of evidence, or harm to police officers or others. U.S. v. Moses, 540 F.3d 263 (4th Cir. 2008).

There are no exigent circumstances in this case. First, there are no exigent circumstances to support entry into the storage room. Alonzo Gardner's first

15

encounter with law enforcement on July 13, 2011 was at approximately 5:00 a.m. He was not armed. (JA 64-72) After the initial search of Consuela Gardner's residence, law enforcement was aware that Alonzo was on house arrest. (JA 80-85) The storage room was searched during a second search at Ms. Gardner's residence.

There were no exigent circumstances because, since the initial searchers learned that Mr. Gardner was on house arrest, determining his location was simple. Officers only needed to contact the law enforcement department which monitors defendants on house arrest. His location could have been pinpointed through his electronic monitoring, obviating the need to stake out and subsequently search the residence.

Even after the officers discovered the locked storage door, there were no exigent circumstances. The room was not accessible from the interior of the home. Assuming the officers had probable cause to believe Alonzo was in that room (which was certainly debatable), they could have watched the door while a search warrant was obtained. Delay in obtaining the warrant would put no one at risk.

Nor can exigent circumstances justify the search of the gun case or duffle bag. At the time the gun case was opened, the officers had already determined that Alonzo Gardner was not in the storage room. (JA 179-180) Likewise, when the officers searched for weapons inside the duffel bag, they had already searched the

premises and confirmed the Defendant was not present.  At the time that the gun case and duffel bag were actually searched, any considerations which have been recognized as supporting a search under exigent circumstances, if they ever existed, no longer existed.

## **CONCLUSION**

Alonzo Gardner respectfully requests that this Court reverse the District Court's partial denial of his Motion to Suppress, grant the motion in its entirety, vacate his sentence, and remand the case to the District Court for proceedings consistent with its decision.

## **REQUEST FOR ORAL ARGUMENT**

Appellant respectfully requests oral argument in this case so that the issues presented may be more fully developed.  Oral argument will significantly aid this Court in evaluating the merits of this appeal.

Respectfully submitted,

/s/Joshua W. Willey, Jr.
Joshua W. Willey, Jr.
MILLS & WILLEY
Post Office Drawer 1638
507 Pollock Street, Suite 5
New Bern, NC  28563
(252) 638-1111
NC State Bar No.:  8095

*Counsel for the Appellant*

17

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

>       this brief contains 3,918 words, excluding the parts of the brief
>       exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

>       this brief has been prepared in a proportional spaced typeface using
>       Microsoft Word in 14 point Times New Roman.

/s/ Joshua W. Willey, Jr.
Joshua W. Willey, Jr.

*Counsel for Appellant*

Dated:  July 31, 2013

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 31, 2013, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

Jennifer P. May-Parker
OFFICE OF THE
  UNITED STATES ATTORNEY
Federal Building
310 New Bern Avenue, Suite 800
Raleigh, NC  27601

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219